EDWARD H. KUBO, JR.  #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Narcotics Section

CHRIS A. THOMAS      #3514
Assistant U.S. Attorneys
Room 6-100, Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail:   chris.thomas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00189 DAE |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S MEMORANDUM IN |
| | ) | OPPOSITION TO DEFENDANT KAMA'S |
| VS. | ) | MOTION TO SUPPRESS; |
| | ) | DECLARATION OF COUNSEL; |
| JEFFREY KAMA,    (02) | ) | CERTIFICATE OF SERVICE |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
DEFENDANT KAMA'S MOTION TO SUPPRESS**

The United States of America, by the undersigned attorney, hereby submits this memorandum in opposition to Defendant's Motion to Suppress (hereinafter "Defendant's Motion").

Defendant's Motion seeks to suppress the approximate amount of one (1) ounce of methamphetamine and a loaded semi-automatic pistol that was found in Defendant's possession. The Government opposes Defendant's Motion on the grounds that the

evidence recovered from the Defendant was properly seized. Defendant was subjected to a traffic stop based on reasonable suspicion due to the fact that he was operating his vehicle 11 m.p.h over the maximum speed limit.  Subsequent to the traffic stop of Defendant, a canine screen resulted in a positive alert for the presence of a controlled substance.  Defendant was arrested based on the positive canine alert and for driving without a license.  A package was recovered during a search of Defendant incident to his arrest and a search warrant was obtained which revealed that the pacakage contained approximately one (1) ounce of methamphetamine.  A search warrant was also executed upon a fanny pack that was in Defendant's possession at the time of his arrest which revealed a loaded semi-automatic pistol with seven rounds of ammunition and drug paraphernalia.

**I.      RELEVANT FACTS**

On November 15, 2004, Drug Enforcement Agency ("DEA"), Hawaii County Police Department ("HCPD"), and Immigration and Customs Enforcement ("ICE") special agents and police officers began a wiretap investigation of the Keith Seichi IMAI ("IMAI") drug trafficking organization, when United States District Judge SUSAN OKI MOLLWAY, District of Hawaii, signed Court Order Number 04-00267 SOM, authorizing the interception of wire communications to and from 808-935-8523 ("Target Telephone #1"), and 808-935-8524 ("Target Telephone #2"), both assigned to a Verizon Hawaii telephone land line, subscribed to Power Train of Hilo, 140 Holomua Street, Hilo, Hawaii, and used primarily by IMAI.

During the course of monitoring IMAI's telephone lines, a series of telephone calls between IMAI and Defendant Jeffrey KAMA (hereinafter "Defendant") were intercepted. On the early morning of December 4, 2004, federal agents monitoring a telephone interception involving the Defendant and IMAI had reason to believe that a drug transaction between Defendant and IMAI was going to occur and informed Hawaii County Police officers on the Big Island of Hawaii to perform surveillance in the area that Defendant was believed to be located. In order to protect the existence of the wiretap investigation, the federal agents did not inform the Hawaii County Police Officers of the basis or the need for surveillance of Defendant.

In the early morning hours of December 4, 2004, Officer Matthew Kaaihue, HCPD, observed Defendant's vehicle travelling on Kanoelehua Avenue heading in the southern direction towards Keeau. Officer Kaaihue, with the aid of a LTI 2020 laser gun, determined that Defendant was travelling 11 miles over the posted speed limit of 35 m.p.h. Based on the observed speeding violation[1], Officer Kaaihue performed a traffic stop on Defendant's Vehicle at approximately 1:30 a.m. During the execution of the traffic stop, Officer Kaaihue also determined that Defendant was driving without a license.

Officer Kenneth Quiocho, HCPD, who was also in the

---

[1] Speeding over the posted maximum speed limit is a violation of Hawaii Revised Statutes §291C-102, which reads in part, "No person shall drive a vehicle at a speed greater than a maximum speed limit ... established by county ordinance."

immediate area, heard over the police radio that Officer Kaaihue was in the process of performing a traffic stop of Defendant. Officer Quiocho proceeded to the location and observed Officer Kaaihue approach Defendant's vehicle. Officer Quiocho had prior information that Defendant was suspected of being a methamphetamine distributor. Officer Quiocho asked Defendant for consent to search his vehicle and Defendant refused. Officer Quiocho then performed a canine screen of Defendant's vehicle at 1:32 a.m. which resulted in a positive alert for the presence of a controlled substance.

    At approximately 1:35 a.m., Defendant was placed under arrest for driving without a license and promoting a dangerous drug based on the narcotics canine alert. A search incident to Defendant's arrest was performed and a package wrapped in a light blue colored paper towel was removed from Defendant's front left jeans pants pocket. Defendant was also wearing a black fanny pack that was removed. The package from Defendant's pocket and the fanny pack was subjected to a canine screen which resulted in a positive alert for the presence of a controlled substance.

    A search warrant was obtained to search Defendant's truck and the contents of the black fanny pack and the package from Defendant's front pants pocket.

    Pursuant to the execution of the search warrant for the black fanny pack, a QFI brand .25 caliber semi-automatic pistol was found and a magazine loaded with 7 rounds of .25 caliber ammunition was found within the fanny pack. Also found in the

fanny pack was a Hawaii State Identification card for Jeffrey Kama and a scale.

The search of the package from Defendant's front pants pocket revealed a ziploc bag that contained a white crystalline substance which field tested positive for methamphetamine. A search of the truck resulted in law enforcement officers seizing a ziplock packet that contained a crystal like substance. The methamphetamine that was seized from the possession of Defendant was submitted for laboratory analysis which resulted in a positive finding for d-methamphetamine HCl in the amount of 27.6 grams at a purity of 96%.

II. **ARGUMENT**

    A. **THE POLICE HAD REASONABLE SUSPICION TO STOP DEFENDANT**

In Whren v. United States, 517 U.S. 818 (1996), the Supreme Court stated that a stop was reasonable under the Fourth Amendment where officers had probable cause to believe that the petitioner violated the traffic code, even if the ultimate charge was not related to the traffic stop. Id. at 808-09. In Whren, police observed a truck in a "high drug area" stopped at a stop sign for an excessive amount of time, which then turned without signalling and sped off at an ecessive rate of speed. Id. at 808. Once the police caught up to the vehicle, the officers observed Michael Wren, one of the passengers, holding two large bags of what appeared to be crack cocaine. Wren argued that the stop had not been justified by probable cause to believe that the

occupants were engaged in illegal drug activity, and that the officers' asserted ground for approaching the vehicle, which was to give them a warning about taffic violations, was pretextual. Id. at 809.

The Supreme Cout held that the officers had probable cause to believe that various provisions of the traffic code had been violated.  Id. at 810.  The Court specifically declined to hold that the Fourth Amendment test for traffic stops should be "whether a police officer, acting reasonably, would have made the stop for the reason given."  Id.  Rather, the Court explained that "subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis," and that "we have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers.  Id. at 813.  Therefore, Whren stands for the proposition that if the officers have probable cause to believe that a traffic violation occurred, the officers may conduct a traffic stop even if the stop serves some other prupose.  Id. at 819, see also, Devenpeck v. Alford, 543, U.S. 146 (2004)(The subjective reason for making the arrest need not be the crimninal offense as to which the known facts provide probable cause).

The Wren decision was discussed by the Ninth Circuit in the case of United States v. Lopez-Soto, 205 F.3d 1101 (9th Cir. 2000).  Prior to the Whren decision, it was settled law that reasonable suspicion was enough to support an investigative traffic stop.  United States v Michael R., 90 F.3d 340, 346 (9th

Cir. 1996).  In Lopez-Soto, the Ninth Circuit stated that it did not believe that the Court in Whren intended to change this settled rule.  The Ninth Circuit reasoned that the facts of Whren involved speeding and failure to signal, and that the parties agreed that from these facts, the police has probable cause to make the disputed stop.  Whren supra at 810.  This threshold agreement allowed the Whren Court to address a different issue, namely the constitutional relavance of the officers' subjective intent in making the stop.  Therefore, the Ninth Circuit court held that given that probable cause was clearly satisfied on the facts before the Court in Whren and that the Court focused its attention elsewhere, the court did not believe that the casual use of the phrase "probable cause" was intended to set a new standard.  Lopez-Soto, supra at 1104.

In Lopez-Soto, reasonable suspicion was defined as "specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity."  Id. at 1105, quoting United States v. Michael R. 930 F.3d at 346.

Applying the applicable law to this case, there is no question that Officer Matthew Kaaihue had reasonable suspicion to stop Defendant for a violation of the traffic code.  Officer Kaaihue readily observed Defendant exceeding the posted maximum speed limit of 35 m.p.h.  Officer Kaaihue, with the aid of a laser gun, determined that Defendant was travelling at 46 m.p.h.

      B.    **BASED UPON THE NARCOTICS DETECTOR DOG ALERT ON DEFENDANT'S TRUCK THERE WAS PROBABLE CAUSE TO ARREST HIM AND TO LAWFULLY SEARCH DEFENDANT'S PERSON INCIDENT TO ARREST, WHICH RESULTED IN THE DISCOVERY OF THE METHAMPHETAMINE IN HIS POSSESSION**

Federal law is clear that a narcotics detector dog alert on an inanimate object will give probable cause to arrest that object's owner/possessor.  See, e.g., Royer, supra, 460 U.S. at 459-60.  This is precisely what happened in this case.  Consequently, it was entirely proper for Defendant to be arrested on the basis of the canine alert on his truck.

Moreover, the methamphetamine was lawfully recovered from Defendant's person through a warrantless search incident to the lawful arrest.  United States v. Robinson, 414 U.S. 218 (1973).  Once the package was discovered and removed from Defendant's front pants pocket, it was subjected to a canine sniff which resulted in a positive alert.  The package was not opened at that time but was held until a search warrant was obtained before determining its contents.  In addition, Defendant's fanny pack was removed and also subjected to a canine sniff which resulted in a positive alert.  The fanny pack was not opened but was held until a search warrant was obtained before determining its contents.

      C.    **THE LAW ENFORCEMENT OFFICERS ALSO HAD PROBABLE CAUSE TO STOP DEFENDANT AND ARREST HIM UNDER THE COLLECTIVE KNOWLEDGE DOCTRINE**

The accepted practice of modern law enforcement is that an officer often makes arrests at the direction of another law

enforcement officer even though the arresting officer himself lacks actual, personal knowledge of the facts supporting probable cause.  United States v. Butler, 74 F.3d 916, 921 (9th Cir. 1996).  Where law enforcement authroities are cooperating in an investigation, the knowledge of one is presumed shared with all.  Illinois v. Andreas, 463 U.S. 765, 772 (1983).

        The Ninth Circuit Court elaborated on this doctrine in United States v. Bernard, 623 F.2d 551 (9th Cir. 1980).  There the defendants were charged with conspiracy to mandufacture methamphetamine in violation of 21 U.S.C. §§ 812, 841(a)(1) and 846.  The district court granted the defendant's motion to suppress and the government appealed.  Id. at 560.  The Ninth Circuit court reversed, holding that the collective knowledge of all of the agents involved in the investigation and surveillance was sufficent to constitute probable cause.  Id.

        Also, in United States v. Hoyos, 892 F.2d 1387 (9th Cir. 1989) the Ninth Circuit court again held that the arresting officer need not have personal knowledge of the facts sufficient to constitute probable cause and need not be aware of the all the facts and circumstances known to the other officers involved in the investigation and all of the reasonable inferences that may be drawn therefrom.  Id. at 1392.

        Therefore, under Bernard and Hoyos, when there has been communication among the agents, probable cause can rest upon the investigating agents' collective knowledge.  United States v. Del Vizo, 918 F.2d 821, 826 (9th Cir. 1990).

In this case, Special Agent Jason Pa, through a series of telephone calls, had reason to believe that Defendant was communicating over the telephone with the target of the investigation, Keith Imai, to conduct a drug transaction. Based on the the call of the early morning of December 4, 2004, Special Agent Pa notified officers of the Hawaii County Police Department to conduct surveillance of Defendant. In addition, Officer Kenneth Quiocho also had knowledge that Jeffrey Kama was a distributor of methamphetamine and that he was picking up ounces of methamphetamine for distribution in the District of Hilo. The telephone call that Special Agent Pa monitored occurred on December 4, 2004 at 12:40 a.m. in the early morning hours. The content of the call was that, "the parts wasn't good enough" and that he was going to come by Keith Imai's shop. Keith Imai was the owner and operator of Power Train Hawaii, Inc., which alledgedly serviced vehicle transmissions. It is patently obvious that 12:40 a.m. is not normal business hours and that a meeting at Imai's shop at that hour, coupled with the knowledge that Keith Imai, a convicted drug distributor was the target of a wiretap investigation for drug distribution and who was conversing with Defendant, a known drug distributor, gave rise to believe that criminal activity was afoot.

When the presence of Defendant confirmed the content of the telephone call and the canine alerted to the odor of a controlled substance, there was ample evidence to determine that probable cause existed to arrest Defendant for a drug offfense.

III. **CONCLUSION**

For the aforesaid reasons, the Defendant's Motion to Suppress should be denied.

DATED:  Honolulu, Hawaii, November 20, 2006.

                EDWARD H. KUBO, JR.
                United States Attorney


                By /s/ Chris A. Thomas
                   CHRIS A. THOMAS
                   Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the attached was served on the following via FAX:

    MYLES BREINER, Esq.
    354 Queen Street
    Suite 200
    Honolulu, Hawaii  96813
    Fax No.: 566-0347

    Attorney for Defendant KEITH IMAI

    NOAH D. FIDDLER, Esq.
    Seven Waterfront Plaza
    500 Ala Moana Blvd., Suite 400
    Honolulu, Hawaii  96813
    Fax No.: 261-1866

    Attorney for Defendant JEFFREY KAMA

    DATED:  Honolulu, Hawaii, November 20, 2006.


    /s/ Janice Tsumoto